IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PETRU STRUGARI,

                Plaintiff,

      v.

SAGAMORE INSURANCE COMPANY,

                Defendant.

Case No. 3:20-cv-00956-SB

**OPINION AND ORDER**

---

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Petru Strugari ("Strugari") sustained bodily injuries when he was involved in a motor vehicle accident, and later filed this suit against his insurer, Defendant Sagamore Insurance Company ("Sagamore"), pursuant to a provision for uninsured/underinsured motorist coverage ("UM/UIM Coverage") in his automobile insurance policy. After Sagamore timely removed the case to this Court based on diversity jurisdiction, the parties engaged in and completed discovery and unsuccessfully attempted to resolve their disputes through court-sponsored mediation.

Thereafter, the parties filed pre-trial motions and participated in a pre-trial conference. About a week before their final pre-trial conference and four-day jury trial, the parties notified

PAGE 1 – OPINION AND ORDER

the Court that they had settled the case. Strugari now moves, pursuant to Oregon Revised

Statutes ("ORS") § 742.061, for an award of attorney's fees.[1]

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), and the

parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. For

the reasons explained below, the Court grants in part and denies in part Strugari's motion for

attorney's fees.

## DISCUSSION

Strugari seeks fees under ORS § 742.061. (Pl.'s Mot. Att'y Fees ("Pl.'s Mot.") at 2, ECF

No. 52; Decl. Ivan Zackheim Supp. Pl.'s Mot. Att'y Fees ("Zackheim Decl.") at 2, ECF No. 53.)

Sagamore objects to the hourly rates of Strugari's counsel, Ivan Zackheim ("Zackheim"), and

Zackheim's legal assistant, Julia Fedchik ("Fedchik"), and argues that the Court should

"substantially reduce[]" the number of hours billed. (Def.'s Objs. Pl.'s Mot. Att'y Fees ("Def.'s

Objs.") at 1, ECF No. 54.)

## I.    APPLICABLE LAW

### A.    The *Erie* Doctrine

The Ninth Circuit has explained that "absent conflict with federal rules, statutes, or

policies, a federal court sitting in diversity is bound to apply state substantive law." *Schnitzer

Steel Indus., Inc. v. Cont'l Cas. Co.*, No. 14-35793, 2016 WL 3059067, at *1 (9th Cir. May 31,

2016) (citing *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1119 (9th Cir. 1987)).

---

[1] The parties agreed that Strugari was entitled to attorney's fees as part of their settlement
agreement but did not seek entry of judgment before briefing the pending motion. (*See* ECF No.
51.) Strugari filed the motion two weeks after the parties reported their settlement. (*See* ECF
Nos. 52-52); *cf.* FED. R. CIV. P. 54(d)(2) (explaining that "[u]nless a statute or a court order
provides otherwise, [a] motion [for attorney's fees] must . . . be filed no later than 14 days after
entry of judgment").

There is no dispute that this Court sits in diversity and is therefore bound to apply state substantive law.

A state's "fee-shifting rules constitute substantive law when they 'embody a substantive policy, such as a statute which permits a prevailing party in certain classes of litigation to recover fees.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991)). Considering that "§ 742.061 requires an award of fees to an insured when 'recovery exceeds the amount of any tender made by the defendant in [an insurance] action,' it constitutes substantive law." *Id.* (quoting OR. REV. STAT. § 742.061(1) and citing *Chambers*, 501 U.S. at 52). Thus, the Court is "bound under the *Erie* doctrine to apply § 742.061." *Id.* (citing *In re Merrill Lynch*, 812 at 1120-21).

### B.    State Substantive Law

#### 1.    Statutory Entitlement

Strugari moves for fees under ORS § 742.061, which provides, in relevant part:

> [Subject to exceptions that do not apply here], if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

OR. REV. STAT. § 742.061(1). In other words, a plaintiff-insured seeking fees must satisfy four conditions:

> (1) [the insured] must have filed a proof of loss with its insurer; (2) settlement must not have occurred within six months of filing of that proof of loss; (3) [the insured] must have brought a court action upon the policy; and (4) [the insured] must have ultimately recovered more than the amount of any tender made by [the insurer] in the action.

*Ash Grove Cement Co. v. Liberty Mut. Ins. Co.*, No. 3:09-cv-00239-HZ, 2014 WL 837389, at *1 (D. Or. Mar. 3, 2014).

The parties do not dispute that Strugari satisfies these four conditions, and as a result, § 742.061 requires an award of attorney's fees here. (*See* Pl.'s Mot. at 2, stating that Sagamore has "agreed that [Strugari] is entitled to attorney fees under ORS 742.061"; Def.'s Surreply Pl.'s Reply ("Def.'s Surreply") at 4, ECF No. 61, addressing Strugari's "entitlement to attorney fees pursuant to ORS 742.061, which ha[s] already been stipulated to by the parties"; *see also* Def.'s Objs. at 2, acknowledging that Strugari "may have proven an entitlement to attorney fees"). The parties do, however, dispute whether Strugari has requested a reasonable amount of attorney's fees. (*See, e.g.*, Def.'s Objs. at 2, "[The] statute still requires this Court to decide 'a reasonable amount to be fixed by the court as attorney fees.'" (quoting OR. REV. STAT. § 742.061(1)).

### 2.    Statutory Factors

ORS § 20.075 provides that "[a] court shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees in any case in which an award of attorney fees is authorized or required by statute." OR. REV. STAT. § 20.075(2). Those eight factors are:

> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

> (b) The objective reasonableness of the claims and defenses asserted by the parties.

> (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

> (e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

> (f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.

(h) Such other factors as the court may consider appropriate under the circumstances of the case.

*Id.* § 20.075(1).

Section 20.075 provides that in addition to the eight factors under subsection (1), a "court shall [also] consider the [eight] factors [in subsection (2) of this section] in determining the amount of an award of attorney fees in those cases" in which an award of attorney fees is authorized or required by statute. *Id.* § 20.075(2); *Foraker v. USAA Cas. Ins. Co.*, No. 3:14-cv-00087-SI, 2018 WL 3873575, at *1 n.1 (D. Or. Aug. 15, 2018). The eight subsection (2) factors are:

(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

(c) The fee customarily charged in the locality for similar legal services.

(d) The amount involved in the controversy and the results obtained.

(e) The time limitations imposed by the client or the circumstances of the case.

(f) The nature and length of the attorney's professional relationship with the client.

(g) The experience, reputation and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

(i) Whether the attorney performed the services on a pro bono basis or the award of attorney fees otherwise promotes access to justice.

OR. REV. STAT. § 20.075(2).

When analyzing the factors under § 20.075, "a court should 'includ[e] in its order a brief description or citation to the factor or factors on which it relies.'" *Foraker*, 2018 WL 3873575, at

*2 (quoting *McCarthy v. Or. Freeze Dry, Inc.*, 957 P.2d 1200, 1208 (Or. 1998)). A court, however, typically has "no obligation to make findings on other statutory criteria that play no role in the court's decision." *McCarthy*, 957 P.2d at 1208; *see also id.* at 1208 n.1 (providing a hypothetical example where a court finds a "lesser award" appropriate and makes findings that would "[o]rdinarily" be sufficient); *see also Frakes v. Nay*, 295 P.3d 94, 106 (Or. Ct. App. 2012) (explaining that "the court ordinarily has no obligation to make findings on statutory criteria that play no role in the court's decision" on a fee award (citing *McCarthy*, 957 P.2d at 1208)).

Consistent with this understanding, and "[a]s a consequence of the court's role in resolving the parties' disputed claims regarding attorney fees, the objections of a party who resists a petition for attorney fees play an important role in framing any issues that are relevant to the court's decision to award or deny attorney fees." *McCarthy*, 957 P.2d at 1208; *Alexander Mfg., Inc. Emp. Stock Ownership & Tr. v. Ill. Union Ins. Co.*, 688 F. Supp. 2d 1170, 1176 (D. Or. 2010) ("The opposing party's objections to the attorney fee award 'play an important role' in framing the issues relevant to the court's decision" (quoting *McCarthy*, 957 P.2d at 1208)). Ultimately, "reasonableness guides the court's determination of the amount of fees to award, [as] '[n]othing in [§ 20.075] authorizes the award of an attorney fee in excess of a reasonable attorney fee.'" *Beck v. Metro. Prop. & Cas. Ins. Co.*, No. 3:13-cv-00879-AC, 2016 WL 4978411, at *12 (D. Or. Sept. 16, 2016) (quoting Or. Rev. Stat. § 20.075(4)), *aff'd*, 727 F. App'x 330 (9th Cir. 2018).

## II.    ANALYSIS

### A.    Waiver

Before analyzing the relevant factors, the Court must address the waiver argument that Sagamore presents in its surreply. (*See* Def.'s Surreply at 2-10.) As Sagamore correctly notes,

Strugari raised "new arguments, factual assertions, or issues" for the first time in his reply brief. (*See id.* at 2.)

For example, Strugari raised arguments in support of a higher hourly rate for his counsel, and moved to amend his motion for attorney's fees to "incorporate that [new] hourly rate . . . [of] $504 to $516 an hour." (Pl.'s Reply Mot. Att'y Fees ("Pl.'s Reply") at 2, ECF No. 57; Def.'s Surreply at 2-3.) Strugari also submitted his counsel's supplemental notations, which expand on the billing entry descriptions from his original timesheet. (*See* Zackheim Decl. Ex. A at 1-42; *cf.* Decl. Ivan Zackheim Supp. Pl.'s Reply ("Suppl. Zackheim Decl.") at 4, ECF No. 58; *id.* Ex. A at 1-42.)

The Court granted Sagamore leave to file its surreply. (ECF No. 60.) Sagamore therefore received an opportunity to (and did) address the new issues and arguments to the extent it deemed necessary and will not be prejudiced by the Court's review of these matters. (*See* Def.'s Surreply at 2-10, presenting arguments other than waiver, such as relevancy, whether counsel's notes cure certain billing entries, and the reasonableness of and burden of production related to counsel's amended hourly rate). Accordingly, the Court exercises its discretion to consider the new issues and arguments Strugari raised in his reply. *See Young v. United States*, 22 F.4th 1115, 1123 n.5 (9th Cir. 2022) ("Even if Lewis and Young waived this argument, we may exercise our discretion to address it because the government argued the issue at length in its answering brief and our review does not prejudice the government."); *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) ("[A] non-movant's opportunity to contest an untimely argument in a sur-reply supports a district court's decision to consider the untimely argument.").

///

///

PAGE 7 – OPINION AND ORDER

**B.    Subsection (1) Factors**[2]

With respect to subsection (1) of § 20.075, Sagamore argues three statutory factors—

(1)(e), (1)(f), and (1)(h)—support reducing Strugari's request for $123,290.00 in attorney's fees.

(Def.'s Objs. at 2-3.)

**1.    Factors (1)(e) and (1)(f)**

Factor (1)(e) is "[t]he objective reasonableness of the parties and the diligence of the

parties and their attorneys during the proceedings." OR. REV. STAT. § 20.075(1)(e). Factor (1)(f)

is "[t]he objective reasonableness of the parties and the diligence of the parties in pursuing the

settlement of the dispute." *Id.* § 20.075(1)(f). Neither of these factors support a fee reduction

here.

Citing factors (1)(e) and (1)(f), Sagamore argues that Strugari was not objectively

reasonable in pursuing settlement, which led to an accrual of unnecessary fees. (Def.'s Objs. at

2.) Sagamore points out that Strugari originally filed the case in state court on April 21, 2020,

rejected Sagamore's last mediation offer of $110,000.00 on or about October 4, 2021, and the

parties ultimately settled for $185,000.00 on November 22, 2022. (*Id.* at 2-3, citing Decl. Grant

Elder ("Elder Decl.") Ex. 101 at 14, ECF No. 56-1.) Sagamore notes that between the time he

rejected the last offer and settled, Strugari incurred an additional $85,737.00 in attorney's fees.

(*Id.* at 3.)

_____

[2] Strugari cites ORS § 20.075(1) and (2) before discussing and questioning whether
several of Sagamore's actions were objectively reasonable. (*See* Pl.'s Mot. at 5-10.) Strugari
acknowledges that his challenge to the objective reasonableness of Sagamore's actions "may not
be significant to a determination of an amount of attorney fees," and he does not seek any fee
enhancement or multiplier based on Sagamore's conduct. (*Id.* at 5-10.) Further, as explained
below and to the extent Strugari raised these issues in anticipation of Sagamore's objections, the
Court notes that it rejected Sagamore's arguments as to whether Strugari and Strugari's counsel
were objectively reasonable. For these reasons, the Court's analysis focuses on the specific
arguments Sagamore presented in seeking a reduction in fees.

Strugari responds that despite his claimed damages and Sagamore's receipt of supporting documents, Sagamore offered him only $30,000.00 before it made the last mediation offer of $110,000.00. (*See* Pl.'s Reply at 3, citing generally to the Zackheim declaration; *see also* Compl. at 1-3, ECF No. 1-4; Zackheim Decl. Ex. A at 7-8, suggesting that nearly two years after the accident and after submitting bills, records, and tax documents, Strugari received an offer of $30,000.00; Compl. at 2-3; Pl.'s Econ. Damages at 1-2, ECF No. 24; Pl.'s Trial Br. at 1-4, ECF No. 25.) Strugari also notes that Sagamore never attempted to satisfy the safe harbor requirements of § 742.061(3) and shield itself from an award of attorney's fees.[3] (Pl.'s Reply at 3.)

Sagamore suggests that Strugari waived these "new fact[s]" because he did not raise them in his initial motion. (Def.'s Surreply at 3-4.) Sagamore also argues that these facts are "not relevant," or, alternatively, are "unsupported by the record before this Court or indicative of very little." (*Id.* at 4.)

Sagamore's arguments are unpersuasive. Sagamore acknowledges that Strugari states that he cited these facts in "disput[ing] [Sagamore's] assertion" as to whether Strugari and Strugari's counsel were objectively reasonable and diligent during the proceedings and in pursuing settlement. (*Id.*, quoting Pl.'s Reply at 3.) Sagamore also fails to recognize that (1) it relies on a fact that appears only in its argument: the settlement amount of $185,000.00 (*see* Def.'s Objs. at 3, citing Elder Decl. Ex. 101 at 14, addressing only events from 2019 and 2020); and (2) a plaintiff's claimed damages (as opposed to proven damages) and potential recovery is part of the

---

[3] Section 742.061(3) "provides a 'safe harbor' from [a fee] award when the insurer, in writing, has accepted coverage; the only issues are 'the liability of the uninsured or underinsured motorist' and 'the damages due the insured;' and the insurer has consented to submit the case to binding arbitration." *Kiryuta v. Country Preferred Ins. Co.*, 376 P.3d 284, 284-85 (Or. 2016) (citation omitted).

record and, as demonstrated below, relevant in assessing the objective reasonableness and diligence of a party during litigation, in pursuing settlement, and in declining any settlement offers.

With respect to the latter point and in addressing factor (1)(f), the Oregon Court of Appeals has stated that "a mere arithmetical comparison of the amount of the rejected settlement with the result actually obtained is simplistic and sterile; it ignores the real dynamics of litigation and settlement." *Erwin v. Tetreault*, 964 P.2d 277, 282 (Or. Ct. App. 1998). Instead, "[o]bjective reasonableness must be assessed in the light of the parties' circumstances and knowledge at the time the settlement was tendered and rejected and not by some *post hoc* reference to the result actually obtained." *Id.* at 283. The Oregon Court of Appeals explained that such an assessment turns on the circumstances in each case and various factors, including "the cost/benefit criteria that commonly inform settlement decisions[.]" *Id.* The Oregon Court of Appeals identified four cost/benefit criteria:

> (1) the objectively reasonable likelihood of succeeding on liability, on claims and counterclaims; (2) the objectively reasonable projected range of recovery, on claims and counterclaims; (3) the objectively reasonable projected expense of continuing the litigation; and (4) the objectively reasonable likelihood of recouping those costs, including fees, or of exposure for the opposing party's expenses, as a 'prevailing party.'

*Id.*; *see also id.* at 283 n.10 (noting that "[t]he fourth consideration should be a function of the first").

The cost/benefit criteria and observations above undermine Sagamore's argument that factors (1)(e) and (1)(f) warrant a reduction in fees. The first consideration favors Strugari. As Sagamore acknowledges, Strugari negotiated a settlement with the "at-fault driver's insurance company," Farmers Insurance Company ("Farmers"), before filing suit. (*See* Def.'s Surreply at 3; *see also* Zackheim Decl. Ex. A at 4, September 7 and October 9, 2018, counsel documented

his receipt of, and a meeting with Strugari to sign, a settlement check from Farmers). The fourth consideration is a "function of the first," *Erwin*, 964 P.2d at 283 n.10, and favors Strugari under the circumstances presented here. *See generally* OR. REV. STAT. § 742.061 (discussing the conditions for fee recovery and safe harbor protection).

The second factor is neutral or slightly favors Strugari. Given that Strugari's injuries resulted from a car accident, Strugari settled with Farmers, and the type and amount of Strugari's claimed damages, an objectively reasonable projected range of recovery was likely around $85,000.00 (i.e., $25,000.00 less than Sagamore's last mediation offer of $110,000.00 and $100,000.00 less than the $185,000.00 Sagamore identifies as the pre-trial settlement amount) to $300,000.00 (i.e., $115,000.00 more than the pre-trial settlement amount and about $112,000.00 less than the damages that Strugari planned to seek at trial, *see* Pl.'s Econ. Damages at 1-2). Notably, when he rejected Sagamore's offer of $110,000.00, Strugari did not know how the Court would rule on pre-trial motions to exclude evidence and argument as to whether he failed to mitigate his damages and whether the collision caused his shoulder injury and related damages, or whether a jury would find his evidence more credible and deserving of more weight. (*See* Trial Order at 2-4, ECF No. 45, denying Strugari's motions to exclude such evidence or arguments and leaving it for a jury to decide which party's evidence was deserving of more weight and more credible).

The third factor is neutral or slightly favors Strugari. The reasonably projected expense of rejecting Sagamore's last mediation offer and proceeding to trial was significant for Strugari, but it was likely that Strugari would recoup a fair amount of those costs. Further, Strugari's expenses would also depend in part on something he did not control: Sagamore's own litigation tactics.

///

Overall, and contrary to Sagamore's argument, factors (1)(e) and (1)(f) are neutral and do not warrant a reduction in fees. *See Alexander*, 688 F. Supp. 2d at 1182 (finding that factor (1)(e) was "neutral because both parties reasonably and diligently pursued their respective claims and defenses").

### 2.    Factor (1)(h)

Factor (1)(h) covers "other factors as the court may consider appropriate under the circumstances of the case." OR. REV. STAT. § 20.075(1)(h). As to this factor, Sagamore argues that Strugari improperly seeks fees related to his negotiations with Farmers. (Def.'s Objs. at 3.) Strugari responds by pointing out that a UM/UIM claim is a "case within a case," Sagamore refused to acknowledge certain facts for two years and raised a "litany of affirmative defenses," and the statute required Sagamore's consent to settle with the at-fault driver's insurer. (Pl.'s Reply at 4.)

Strugari is correct as to consent and a UM/UIM claim being a case-within-a-case. *See Spearman v. Progressive Classic Ins. Co.*, 366 P.3d 821, 832 (Or. Ct. App. 2016) ("[A] UM/UIM claim is a case-within-a-case. Consequently, any defense that would be permissible in a personal injury claim is a permissible defense within a UM/UIM claim."); OR. REV. STAT. § 742.504(4)(a) ("This coverage does not apply to bodily injury of an insured with respect to which the insured or the legal representative of the insured shall, without the written consent of the insurer, make any settlement with or prosecute to judgment any action against any person or organization who may be legally liable therefor."). Sagamore responds that the legal authorities Strugari cites do not address fees related to a settlement with an at-fault driver's insurer. (Def.'s Surreply at 6.)

At least one prior case from this district (which involved Strugari's counsel) awarded fees under similar circumstances. In that case, the defendant-insurer opposed its insured's personal

representative's request for "fees related to time [that counsel had] spent on issues of probate, workers' compensation and coverage availability under other policies."[4] *Nikolaychuk v. Nat'l Cas. Co.*, No. 3:17-cv-00921-JE, 2019 WL 1489062, at *4 (D. Or. Apr. 4, 2019). In finding the insurer's arguments unpersuasive, the district court explained that under ORS § 742.061, a plaintiff can recover fees, including those "incurred before a lawsuit is filed," if they are "reasonably related to this action itself," and "conclude[d] that the disputed entries were reasonably related to the action and to obtaining coverage from [the insurer] for the loss." *Id.* (simplified).

Consistent with this decision and on this record, the Court concludes that Sagamore's objection under factor (1)(h) does not support a reduction in fees. The Court's across-the-board cut imposed below, however, effectively results in a reduction of Strugari's claimed hours for this work.

### C.    Subsection (2) Factors

With respect to subsection (2) of § 20.075, Sagamore objects to Strugari's fee request to the extent that it (1) seeks to recover for clerical work that is not compensable, (2) is based on vague billing descriptions, (3) includes block-billed time, (4) overbills for certain work, and (5) is based on Strugari's counsel's initially requested hourly rate of $430.00 and legal assistant's hourly rate of $100.00, as opposed to reduced hourly rates of $413.00 and $75.00, respectively. (Def.'s Objs. at 4-10.) In support of its objections, Sagamore relies on factor (2)(a) with respect

---

[4] The Court takes judicial notice of the fact that the disputed time entries in *Nikolaychuk* concerned the policy an insurer issued to the underinsured driver. *See* Response Amended Motion Attorney Fees at 2-3, *Nikolaychuk v. Nat'l Cas. Co.*, No. 3:17-cv-00921-JE (D. Or. Jan. 10, 2019), ECF No. 88; *see also Medina v. Saul*, 840 F. App'x 71, 73 n.1 (9th Cir. 2020) (noting that "judicial notice of previous proceedings [is] appropriate to determine 'what issues were actually litigated'") (citation omitted); FED. R. EVID. 201(c)(1) ("The court . . . may take judicial notice on its own[.]").

to clerical work and vague time entries, factors (2)(a), (2)(c), and (2)(g) with respect to block-billed and overbilled time entries, and factors (2)(c) and (2)(g) with respect to the challenged hourly rates. (*Id.* at 4-9.)

### 1.    Lodestar Method and Equivalency

"[F]actor [(2)](a) generally relates to the reasonableness of the number of hours expended by counsel for the prevailing party, factors [(2)](c) and [(2)](g) generally relate to the reasonableness of the hourly rates charged, and factor [(2)](d) generally informs whether an upward or downward adjustment might be appropriate." *CKH Fam. Ltd. P'ship v. Holt Homes, Inc.*, No. 3:17-cv-00441-SI, 2018 WL 1536479, at *1 (D. Or. Mar. 29, 2018), *aff'd*, 770 F. App'x 802 (9th Cir. 2019); *Foraker*, 2018 WL 3873575, at *1 (making the same observation in assessing attorney's fees under § 742.061). "Taken together, these factors are comparable to what is often referred to as the 'lodestar' method for calculating a reasonable attorney's fee." *CKH Fam.*, 2018 WL 1536479, at *1 (citing *Perdue v. Kenny A. ex rel. Winn*, 599 U.S. 542, 552 (2010)).

Notably, in *Strawn*, the Oregon Supreme Court observed that the lodestar method was "a permissible one under the statutes involved," which included ORS § 20.075. 297 P.3d at 447. After concluding that the factors under ORS § 20.075(1) did "not inform the proper disposition of [the] particular fee petition [at issue]," *id.* at 448 n.11, and evaluating certain factors under ORS § 20.075(2), such as the novelty, difficulty, and skill needed to perform the legal services required and an expert's opinion as to an average hourly rate and the numbers of hours reasonably expended, the Oregon Supreme Court calculated a "reasonable lodestar fee for the work done[.]" *Id.* at 448-49. The Oregon Supreme Court then assessed whether to adjust the lodestar based on, among other things, factor (2)(h): whether the fee was fixed or contingent. *Id.* at 449-50.

Taken in combination, the factors Sagamore relies on, factors (2)(a), (2)(c), and (2)(g), are comparable to the first step of a lodestar calculation. *See Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("The lodestar method is a two-step process. . . . First, a court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate.") (citation omitted). Consistent with the authorities above, the Court evaluates the parties' arguments and Sagamore's reliance on factors (2)(a), (2)(c), and (2)(g) as part of its analysis of a reasonable hourly rate and the number of hours reasonable expended. *See Strawn*, 297 P.3d at 448-49 (taking a similar approach); *see also Foraker*, 2018 WL 3873575, at *6-11 (deciding whether the factors supported a multiplier, a matter not at issue here, before calculating a "reasonable lodestar figure").

## 2.    Reasonable Hourly Rate

### a.    Attorney Hourly Rate

"[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015) (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)). "The party requesting fees has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in step with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Beck*, 2016 WL 4978411, at *20 (simplified). In Oregon, "[t]he best evidence of the prevailing rate . . . is the periodic Economic Survey conducted by the Oregon State Bar." *Id.* (citations omitted).

Strugari's counsel seeks an hourly rate of $430.00 based on his over thirty years of experience representing personal injury plaintiffs, which has included three federal trials, the last

of which resulted in a 2018 verdict of $1.9 million. (*See* Zackheim Decl. at 1-2); *see also Nikolaychuk*, 2019 WL 1489062, at *1 ("On October 16, 2018, the jury returned a verdict . . . in the sum of $1,911,131.52."). In support, Strugari's counsel relies on the Oregon State Bar 2017 Economic Survey (the "OSB 2017 Survey"), which demonstrates that without adjusting for inflation, his hourly rate of $430.00 is slightly higher than the mean rate of $413.00 and median rate of $425.00 for Portland attorneys with over thirty years of experience and falls between the 75th percentile ($350.00) and 95th percentile ($450.00) for Portland personal injury attorneys. (Pl.'s Mot. at 3-5, citing Pl.'s Mot. Ex. 2 at 1-2, ECF No. 52-2.) Strugari's counsel also relies on inflation data in arguing that a reasonable hourly rate for a Portland personal injury attorney with his experience "would be between $432 and $442[.]" (*Id.*, citing Pl.'s Mot. Ex. 1 at 1-3, ECF No. 52-1.)

In the reply, Strugari's counsel "moves to amend his attorney fee petition to incorporate [an] hourly rate . . . [of] $504 to $516 an hour." (Pl.'s Reply at 2.) Strugari's counsel bases this new hourly rate on the OSB 2017 Survey and the same inflation-related data he previously cited. (*Id.* at 1-2.)

Sagamore objects to Strugari's counsel's request to increase his claimed hourly rate by nearly $100. (Def.'s Surreply at 2-3, 8.) Sagamore acknowledges that it accepts, and this Court's local rules accept, the OSB 2017 Survey as the appropriate initial benchmark for hourly rates but emphasizes that Strugari's counsel's inflation data amounts to inadmissible hearsay, as it is merely attached as an exhibit to the motion, not to a declaration based on counsel's personal knowledge.[5] (Def.'s Objs. at 8-10; Def.'s Surreply at 8.) Sagamore maintains that the Court

---

[5] A portion of the OSB 2017 Survey is also attached as an exhibit to Strugari's motion, not as an exhibit attached to and supported by counsel's declaration, but the Court may take judicial notice of the OSB 2017 Survey. *See, e.g., Ayala v. Cook Fam. Builders LLC*, No. 3:17-

should reduce Strugari's counsel's hourly rate to $413.00, the mean rate for a Portland attorney with over thirty years of experience, because this case was not novel or complex. (Def.'s Objs. at 9.)

As an initial matter, the Court denies Strugari's counsel's motion to amend his hourly rate. Strugari's counsel failed adequately to explain or justify an eleventh-hour increase to his initially requested rate of $430.00.

The Court finds $430.00 to be a reasonable hourly rate for several reasons. First, and without considering Strugari's counsel's inflation-related exhibits, calculations, or websites, the Court notes that although an hourly rate of $430.00 is slightly higher than the applicable mean and median rates and approaching the 95th percentile for Portland personal injury attorneys, judges in this district routinely approve such rates because the OSB 2017 Survey is now dated and has not been adjusted for inflation. *Cf. Stavrum v. Nw. Precision Constr. LLC*, No. 3:21-cv-01761-SB, 2023 WL 2761363, at *4 (D. Or. Mar. 6, 2023) (approving an hourly rate that was higher than the 95th percentile for an attorney with four to six years of experience, and observing that the attorney "correctly note[d] that the most recent 2017 OSB Economic Survey is now dated, and has not been adjusted for inflation"); *Wentz v. Progressive Direct Ins. Co.*, No. 3:21-cv-00473-MO, 2022 WL 1516261, at *3 (D. Or. May 13, 2022) (approving rates higher than the median rates in the OSB 2017 Survey, and noting that although "counsel's rates are higher than those medians, that discrepancy [was] largely explained by the economic inflation of the past few years"); *Schultz v. Nw. Permanente P.C.*, No. 3:20-cv-00626-IM, 2022 WL 3909948, at *1-7 (D. Or. Aug. 31, 2022) (approving rates that exceeded the median hourly rates based on experience and noting that the OSB 2017 Survey "does not account for inflation").

---

cv-00266-PK, 2018 WL 1631453, at *5 (D. Or. Mar. 6, 2018) (taking judicial notice of the OSB 2017 Survey); FED. R. EVID. 201(c)(1) ("The court . . . may take judicial notice on its own.").

Second, Strugari's counsel has failed to demonstrate that a higher rate is justified. Strugari's counsel declares that he had three trials in federal court, including one that resulted in a sizeable jury verdict, but unlike many cases, he failed to provide any affidavits of attorneys opining as to the reasonableness of a higher rate or the hours reasonably expended, and failed to expand on or discuss his more recent or other related legal work. *See generally Schultz*, 2022 WL 3909948, at *3 (observing that "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate" (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990))).

Third, Strugari's counsel's initially requested rate of $430.000 is reasonable given his April 2019 rate determination in *Nikolaychuk*. *See Nikolaychuk*, 2019 WL 1489062, at *4 (declining to adjust Strugari's current counsel's requested hourly rate of $425.00, which, according to the OSB 2017 Survey, was "within the range, albeit at the high end, for Portland-area attorneys with comparable levels of experience" of over thirty years).

For these reasons, the Court finds Strugari's initially requested hourly rate of $430.00 to be reasonable.

### b.    Legal Assistant Hourly Rate

Strugari's counsel also seeks an hourly rate of $100.00 for his legal assistant, who he initially identified as Fedchik. (Zackheim Decl. at 2.) After Sagamore sought a reduction to $75.00 based on Strugari's counsel's failure to discuss his legal assistant's qualifications or years of experience (Def.'s Objs. at 9-10), Strugari's counsel filed a supplemental declaration, wherein he declares under penalty of perjury that Julia "Chubok," as opposed to Fedchik, is not a certified paralegal but is "a cum laude college graduate from Portland State [University]," has been "with

[him] for over six years . . . [, and is] an important part of [his] practice." (Suppl. Zackheim Decl. at 4-5.)

Judges in this district have approved an hourly rate of $90.00 for a legal assistant. *See Sorlie v. Mountain Run Sols., LLC*, No. 3:21-cv-00191-YY, 2021 WL 5872074, at *5 (D. Or. Sept. 7, 2021)* ("Petitioner seeks compensation for a paralegal and legal assistant at the rate of $135 and $90 per hour, respectively. . . . As for the $90 hourly rate requested for the services of a legal assistant, [judges in this district have] previously authorized that rate in other cases." (citing *Or. Laborers-Emps. Health & Welfare Tr. Fund v. Baseline Indus. Constr., Inc.*, No. 3:19-cv-1343-IM, 2019 WL 6329336, at *4 (D. Or. Nov. 26, 2019) and *Wilson v. Decibels of Or., Inc.*, No. 1:17-cv-01558-MC, 2019 WL 6245423, at *4 (D. Or. Nov. 22, 2019)); *see also Muller v. Country Mut. Ins. Co.*, No. 3:14-cv-001345-MO, 2017 WL 6209701, at *9 (D. Or. Dec. 8, 2017) ("This court has previously awarded $50 per hour for paralegals and assistants where there was no evidence of their experience or skills."). Consistent with cases from this district, the Court concludes that a reasonable hourly rate for Strugari's counsel's legal assistant is $90.00.[6]

### 3. Hours Reasonably Expended

The Court must next address the number of hours reasonably expended on this case. *See $28,000 in U.S. Currency*, 802 F.3d at 1106-07 (turning to the number of hours reasonably expended after addressing the reasonable hourly rate). Sagamore objects to Strugari's requested hours on the grounds that he bills for clerical work, and his time records include vague time

---

[6] The Court assumes that the Fedchik reference was either an incorrect last name or maiden name.

entries, improper block billing, and suggest that he overbilled for certain matters.[7] (Defs.' Objs. at 4-9.)

### a.    Relevant Authorities

Clerical and secretarial tasks are considered overhead expenses reflected in the hourly billing rate. *Stavrum*, 2023 WL 2761363, at *3. Courts have described the following tasks as "clerical or ministerial" and thus not compensable:

> reviewing Court-generated notices; scheduling dates and deadlines; calendaring dates and deadlines; notifying a client of dates and deadlines; preparing documents for filing with the Court; filing documents with the Court; informing a client that a document has been filed; personally delivering documents; bates stamping and other labeling of documents; maintaining and pulling files; copying, printing, and scanning documents; receiving, downloading, and emailing documents; and communicating with Court staff.

*Reyes v. Tanaka*, No. 17-cv-00143, 2020 WL 2857493, at *2 (D. Haw. June 2, 2020) (citations omitted). This Court and others have made similar observations in reducing fee requests. *See Stavrum*, 2023 WL 2761363, at *3 ("Clerical tasks include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents.") (simplified); *Goldingay v. Progressive Cas. Ins. Co.*, No. 3:17-cv-01491-SI, 2019 WL 852992, at *7 (D. Or. Feb. 22, 2019) (identifying "numerous billing entries that fall into the category of clerical work[,] . . . such as formatting and filing the complaint, docketing deadlines, setting calendar reminders, bates stamping documents, and downloading and saving electronic files"); *Melodee H. ex rel. Kelii H. v. Dep't of Educ., Haw.*, No. 07-cv-00256, 2008 WL 4344701, at *9

---

[7] Strugari concedes that he is not entitled to recover for entries totaling 7.9 attorney hours and 1.7 legal assistant hours. (Suppl. Zackheim Decl. at 1-2.) Strugari attributes most of these concessions to "duplicate[s]" and "math error[s]." (*Id.* at 2.) Although he addresses these concessions and Sagamore's related objections in his reply brief (Pl.'s Reply at 5-8), Strugari also seeks an additional 7.4 hours in compensation for preparing the reply brief, as discussed below. (*See id.* at 8.)

(D. Haw. Sept. 23, 2008) (finding that "a number of [counsel's] entries [we]re for clerical tasks, including gathering documents, batestamping exhibits, and filing documents").

With respect to vague and block-billed entries, "[o]ther courts, including the District of Oregon, [have] specifically caution[ed] against both block-billing and providing vague or otherwise inadequate descriptions of tasks because these practices hinder a court's ability to assess the reasonableness of the time expended." *Hood River Cnty. Sch. Dist. v. Student*, No. 3:20-cv-1690-SI, 2022 WL 1153986, at *3 (D. Or. Apr. 19, 2022) (citing U.S. District Court, District of Oregon, Message from the Court Regarding Attorney Fee Petitions, *available at* https://ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions (last updated Mar. 2, 2017)); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("It was reasonable for the district court to conclude that [the plaintiff] failed to carry her burden [of documenting the appropriate hours expended in the litigation], because block billing ma[de] it more difficult to determine how much time was spent on particular activities.") (citations omitted).

Further, courts have appropriately "reduced fee awards in prior cases where counsel billed in .1 increments for receiving emails, if it was clear from the billing records that the email in question would not take six minutes to read." *Stavrum*, 2023 WL 2761363, at *3 (citing *Najm v. City of Portland*, No. 3:17-cv-01714-SB, 2018 WL 3448461, at *3 n.4 (D. Or. June 29, 2018)); *see also Covelli v. Avamere Home Health Care LLC*, No. 3:19-cv-486-JR, 2022 WL 575966, at *7 (D. Or. Feb. 25, 2022) (imposing a reduction of nearly 60% for charging "many entries of one-tenth or more hours for reviewing minute orders, Court notices, and Court emails regarding the filing of motions and orders," and noting that a court has held that "[t]asks such as reviewing Court-generated notices, notifying clients of court hearings, filing documents with the

Court, communication with court staff, scheduling, and corresponding regarding deadlines, are clerical and not compensable" (citing *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010))).

Judges in this district have also expressed concern about such practices. *See Najm*, 2018 WL 3448461, at *3 n.4 ("It takes only seconds to read some emails. Even if counsel spent one full minute reviewing an email, if he instead bills six minutes (i.e., .1 hour) to read that email he could bill his clients for six hours of work that took him just one hour to perform (i.e., 60 emails reviewed in one hour × .1 hour for each email = 6 hours of billable time in one hour)."); *Mumford v. Eclectic Inst., Inc.*, No. 3:15-cv-00375-AC, 2016 WL 8711693, at *6 (D. Or. Apr. 29, 2016) ("[Counsel] has billed separately for each email sent or received on this matter at a standard rate of .1 hours. The Court is discouraged by this continued practice."); *Arnold v. Pfizer, Inc.*, No. 3:10-cv-01025-AC, 2015 WL 4603326, at *9 (D. Or. July 29, 2015) (cautioning that "the practice of billing .1 hour for each and every email masks excess and redundancies") (citation omitted).

### b.    Reduction in Hours

As explained below, the Court has reviewed the parties' papers and finds that a reduction is warranted.

There are two methods to reduce the hours in an attorney's fee application. The first method entails "conduct[ing] an hour-by-hour analysis of the fee request, and exclud[ing] those hours for which it would be unreasonable to compensate the prevailing party." *$28,000 in U.S. Currency*, 802 F.3d at 1108 (quoting *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013)). The second method entails "mak[ing] across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat

from a [massive] fee application." *Id.* (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992)).

If "a district court reduces either the number of hours or the lodestar by a certain percentage greater than 10%, it must provide a clear and concise explanation for why it chose the specific percentage to apply." *Gonzalez*, 729 F.3d at 1200 (citing *Gates*, 987 F.2d at 1398 and *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)). A district court, however, "can impose a small reduction, no greater than 10[%]—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Id.* at 1203 (quoting *Moreno*, 534 F.3d at 1112).

Sagamore submitted a color-coded copy of Strugari's time records, which identifies each entry Sagamore considered clerical work, vague, block billing, overbilling, or irrelevant. (*See* Elder Decl. Ex. A at 1-42.) Strugari attempted to remedy or address these entries by (1) making limited concessions, (2) updating and expanding on his billing descriptions, in an attempt to allay concerns about vagueness, whether the entries cover clerical work, etc., (3) disputing Sagamore's overbilling objection and whether certain entries amount to clerical work, and (4) supplementing the record with a declaration addressing Strugari's counsel's practices at his law office and what references to "fax" and "indexes" mean in the context of those practices, and matters such as Strugari's counsel's general preferences to file court documents and schedule depositions and conferences on his own, and the fact that he does not "consider such scheduling [among attorneys to be] a clerical endeavor." (*See* Suppl. Zackheim Decl. at 3-4; *id.* Ex. A at 1-42; Pl.'s Reply at 5-8.)

There are several reasons why a reduction is warranted here. The parties' filings, however, make it difficult for the Court to conduct a meaningful hour-by-hour analysis of

Strugari's fee request, and thus the Court applies an across-the-board percentage cut in the requested hours.

At the outset, the Court notes that contrary to its arguments, Sagamore received an opportunity to respond to Strugari's amended entries, and did so. (*See* Def.'s Surreply at 1-10.) Although Sagamore generally disputes whether Strugari's amendments cure, among other things, entries that were vague and/or amounted to clerical work, Sagamore provides only a few specific examples in support of its position and does not provide the Court with specific guidance on each of Strugari's "line by line responses" to its initial objections. (*Id.* at 6-7, citing Pl.'s Reply at 6.)

At the same time, the Court recognizes that "as the party seeking an award of fees, [Strugari] has the burden of establishing the reasonableness of the fee amount that he requests." *Strawn*, 297 P.3d at 449 (citing *Hillsboro v. Maint. & Constr. Serv.*, 523 P.2d 1036, 1037 (Or. 1974))). Strugari has done so in some respects, as Sagamore seems to agree in not opposing Strugari's 42-page fee request in its entirety. But Strugari's block-billed, incremental, and brief and at times vague billing descriptions make it difficult to determine how much time counsel spent on particular activities and thus an appropriate reduction in fees. (*See* Suppl. Zackheim Decl. Ex. A at 1-42.)

Furthermore, although Strugari's counsel disputes whether certain tasks like deposition scheduling is a clerical task, and prefers to handle tasks like filing court documents on his own (*see id.* at 3-4), the cases above are clear that such tasks are part of overhead expenses reflected in the hourly billing rate and are not compensable. The Court also notes that Strugari's counsel requests 7.4 hours for preparing the reply brief but did not (1) address whether this figure accounts for the fact that several of Sagamore's objections, and his time responding to those objections, was attributable to his deficient billing submissions, as he partially concedes, or (2)

submit any billing records in support. (*See* Pl.'s Reply at 6, 8; Suppl. Zackheim Decl. Ex. A at 42.)

Courts have declined to award fees for drafting a reply brief under similar circumstances. *See Price v. Reliance Standard Life Ins. Co.*, No. 22-cv-04300, 2023 WL 2600453, at *2 (N.D. Cal. Mar. 22, 2023) ("[Counsel] submitted a declaration in which he says that he spent in excess of 10 hours drafting the brief, . . . [but] no billing records were submitted in support of this additional request. In addition, [plaintiff] is already seeking fees for over ten hours of work billed on the initial brief. Consequently, the time spent on the reply brief was unreasonable and is excluded in full.") (simplified); *Smith v. Payne*, No. 12-cv-01732, 2013 WL 1615850, at *3 (N.D. Cal. Apr. 15, 2013) ("Defendants did not submit any billing records in connection with their work on the reply brief on the present motion, and instead made a conclusory statement about the sum they seek in a declaration by counsel. Without the billing records for that work, the court is unable to determine whether the hours claimed were unnecessary, duplicative, or excessive. Therefore, the court declines to award Defendants the fees incurred in connection with their reply brief.").

In light of the cases and observations above, the Court declines to award Strugari an additional 7.4 attorney hours for preparing the reply brief. As to Strugari's post-concession request for 264.1 attorney hours and 61.6 legal assistant hours, the Court concludes that a ten percent reduction to the hours requested (i.e., haircuts of 26.41 and 6.16 hours, respectively) is appropriate. *See Stavrum*, 2023 WL 2761363, at *4 (imposing a ten percent reduction in light of several billing issues). This accounts for the clerical, vague, block-billed, incremental, and uncured billing entry issues discussed herein, as well as counsel's occasional preference to perform and bill for clerical work. This results in a total award of $107,196.30 (i.e., 237.69

attorney hours, or 264.1 minus 26.41, multiplied by an hourly rate of $430.00, which equates to $102,206.70, plus 55.44 legal assistant hours, or 61.6 minus 6.16, multiplied by an hourly rate of $90.00, which equates to $4,989.60), as opposed to a total of $123,290.00. (*See* Zackheim Decl. at 2.)

### 4.    Adjustments to the Lodestar

"The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Hood River Cnty. Sch. Dist.*, 2022 WL 1153986, at *9 (quoting *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993)). A "court may rely on any of these factors to increase or decrease the lodestar figure, [but] there is a 'strong presumption that the lodestar is the reasonable fee.'" *Id.* (quoting *Crawford v. Astrue*, 586 F.3d 1142, 1149 (9th Cir. 2009)).

The Court does not find that the factors discussed support an upward or downward departure from the lodestar. The reductions above adequately account for the Court's concerns. The Court also notes that although Strugari's counsel points out that he worked on a contingent fee basis, which *Strawn* considered in relation to ORS § 20.075(2)(h) and whether to adjust the lodestar, *see Strawn*, 297 P.3d at 449-52, Strugari has not sought any enhancement or multiplier here.

### CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART Strugari's motion for attorney's fees (ECF No. 52), and awards Strugari $107,196.30 in fees.

**IT IS SO ORDERED.**

DATED this 19th day of April, 2023.

_Stacie F. Beckerman_
_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge